UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

|  |  |
|---|---|
| AMERICAN FUEL & PETROCHEMICAL MANUFACTURERS,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY,<br><br>　　　　Respondent. | Case No. 19-1124 |

## MOTION OF RENEWABLE FUELS ASSOCIATION FOR LEAVE TO INTERVENE IN SUPPORT OF RESPONDENT

Pursuant to Federal Rule of Appellate Procedure 15(d) and D.C. Circuit Rule 15(b), the Renewable Fuels Association ("RFA") respectfully moves for leave to intervene in support of Respondent United States Environmental Protection Agency ("EPA") in this action[1] seeking review of EPA's Final Rulemaking on Modifications to Fuel Regulations to Provide Flexibility for E15; Modifications to RFS RIN Market Regulations (the "Final Rule"), 84 Fed. Reg. 26,980 (June 10,

---

[1] Pursuant to D.C. Circuit Rule 15(b), this motion should be deemed a motion to intervene in all appeals that have been filed and that will be filed in this Court involving the same underlying EPA action.

2019).[2] Petitioner American Fuel & Petrochemicals Manufacturers and Respondent EPA each take no position on this motion to intervene.

## BACKGROUND

Section 211(h)(1) of the Clean Air Act ("CAA") prohibits the Reid Vapor Pressure ("RVP") of gasoline from exceeding 9.0 pounds per square inch ("psi") during the summer season.[3] However, section 211(h)(4), commonly referred to as the "1-psi waiver," allows gasoline-ethanol blends to exceed section 211(h)(1)'s RVP limit. Under EPA's previous interpretation of section 211(h)(4), only blends of ethanol and gasoline containing at least 9 percent and no more than 10 percent ethanol by volume ("E10") were granted the 1-psi waiver.

On May 30, 2019, EPA finalized an interpretive rulemaking that adopts a new statutory interpretation and makes corresponding regulatory changes to extend the 1-psi waiver to gasoline blends containing 15 percent ethanol by volume ("E15") during the summer season. Under the Final Rule, published in the Federal

---

[2] A corporate disclosure statement pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1 and a certificate of parties pursuant to Circuit Rules 27(a)(4) and 28(a)(1)(A) also are attached to this motion.

[3] CAA sec. 211(h)(1) requires EPA to establish restrictions on RVP during the high ozone season, which EPA has defined to be the period between June 1 and September 15. 40 CFR § 80.27. EPA regulates the RVP of gasoline during the regulatory control period, also known as the summer season, which it has determined to be May 1 through September 15. *See* 84 Fed. Reg. 26,980, 26,981 (June 10, 2019).

Register on June 10, 2019, parties will be able to make, distribute, and sell E15 blends made with the same conventional blendstock for oxygenate blending that is used to make E10 blends during the summer season, and E15 will be held to the same gasoline volatility standards as E10. 84 Fed. Reg. at 26,982.

On June 10, 2019, Petitioner American Fuel & Petrochemical Manufacturers sought review of the Final Rule in this Court.

## ARGUMENT

RFA seeks to intervene in this case in order to protect its substantial interest in EPA's implementation of the 1-psi waiver. RFA's interests are not adequately represented by the existing parties and may be harmed by a favorable ruling for Petitioners. Because RFA meets the standard for intervention in petition-for-review proceedings before this Court, this motion for leave should be granted.

### I.   Standard for Intervention

Federal Rule of Appellate Procedure 15(d) permits a party to intervene in a proceeding to review agency action if a motion to intervene is "filed within 30 days after the petition for review is filed" and "contain[s] a concise statement of the interest of the moving party and the grounds for intervention." Fed. R. App. P. 15(d).

Intervention in this Court is governed by the same standards as in a district court, *Mass. Sch. of Law at Andover, Inc. v. United States*, 118 F.3d 776, 779 (D.C.

Cir. 1997). Thus, a party has a right to intervene if it "claims an interest relating to the…transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a). RFA satisfies this standard.[4]

### A. RFA's Motion is Timely and Will Not Delay or Cause Undue Prejudice

This motion is timely as it is being filed within 30 days of the filing of the Petition in this case on June 10, 2019. It is being served on all parties to the case and the discussion herein constitutes "a concise statement of [RFA's] interest . . . and the grounds for intervention." Fed. R. App. P. 15(d). Granting RFA's motion to intervene will not delay the proceedings in this Court and will not cause undue prejudice to any party.

### B. RFA Has a Cognizable Interest in This Case

EPA has already acknowledged that "[e]ntities potentially affected by this final rule include those involved with the production, importation, distribution, marketing, and retailing of transportation fuels, including…renewable fuels such as ethanol, biodiesel, and renewable diesel." 84 Fed. Reg. at 26,980. As the leading trade association for America's ethanol industry, RFA and its members—

---

[4] RFA also satisfies the standard for permissive intervention because it has "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b).

comprising ethanol producers and supporters of the ethanol industry—have a substantial interest in keeping the 1-psi waiver available to E15 blends. RFA has advocated for the removal of this arbitrary regulatory obstacle to year-round blending of E15 since EPA's approval of E15 nine years ago.[5] The President and CEO of RFA has urged EPA to extend the 1-psi waiver beyond E10 to E15 in testimony before the House Energy and Commerce Subcommittee on the Environment, and RFA actively participated in the notice and comment process by submitting public comments supporting the adoption of the rule that would give RVP parity to E10 and E15.[6] The final rule will encourage the production of E15 blends by allowing retailers to offer such blends on a year-round basis without having to use different RVP gasoline blendstocks for E10 and E15. EPA recognized that its previous interpretation required the production and distribution

---

[5] In 2010 and 2011, EPA partially approved a waiver request allowing the introduction of E15 into commerce for use in model year 2001 and newer light-duty motor vehicles. 75 Fed. Reg. 68,094 (Nov. 4, 2010); 76 Fed. Reg. 4,662 (Jan. 26, 2011).

[6] *See* Testimony of Geoff Cooper Before the Committee on Energy and Commerce, Subcommittee on Environment Hearing on "Discussion Draft: The 21st Century Transportation Fuels Act" (Dec. 11, 2018), *available at* https://docs.house.gov/meetings/IF/IF18/20181211/108781/HHRG-115-IF18-Wstate-CooperG-20181211.pdf; Comments of Renewable Fuels Association to "Modifications to Fuel Regulations To Provide Flexibility for E15; Modifications to RFS RIN Market Regulations," Docket ID No. EPA–HQ–OAR–2018–0775 (April 29, 2019).

of low-RVP blendstock, and the cost of producing and distributing this type of blendstock limited the availability of E15. *See* 84 Fed. Reg. at 26,993.

### C. Intervention Is Necessary to Preserve RFA's Interests

Participation in this litigation is essential for RFA to protect the interests of its members. Any vacatur or delay in the implementation of the Final Rule on the application of the 1-psi waiver to E15 would re-establish regulatory burdens that hinder E15 adoption. This, in turn, would reduce demand for the renewable fuels that RFA's members produce and sell. Such an outcome would adversely affect their businesses and undermine the investments RFA's members have made in the refineries, feedstocks, and technologies used to produce renewable fuel.

### D. RFA's Interests Would Not Be Adequately Represented by Another Party

Further, intervention is necessary because RFA's interests would not be adequately represented by another party. The burden of showing that there is no adequate representation is "not onerous," *Diamond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986) (internal quotations omitted), and courts "look skeptically on government entities serving as adequate advocates for private parties." *Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 321 (D.C. Cir. 2015) (quotation marks omitted). EPA, in representing the general public interest, cannot adequately represent the narrower private interests of trade

associations such as RFA. *See Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736-737 (D.C. Cir. 2003).[7]

Because RFA meets the standard for intervention in petition-for-review proceedings before this Court, its motion for leave should be granted.

## II. Article III Standing

To the extent the D.C. Circuit requires intervenors to demonstrate Article III standing, RFA also meets the standard. *See, e.g.*, *Deutsche Bank Nat'l Trust Co. v. FDIC*, 717 F.3d 189, 193 (D.C. Cir. 2013). An association has Article III standing to sue on behalf of its members when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Military Toxics Project v. EPA*, 146 F.3d 948, 953-54 (D.C. Cir. 1998). So long as one RFA member can show "injury-in-fact, causation, and redressability," *see Deutsche Bank*, 717 F.3d at 193, that is enough to confer standing on RFA. *See Military Toxics Project*, 146 F.3d at 954.

RFA's members have standing to sue in their own right because the production and profitability of each member would be directly harmed by any

---

[7] RFA also can provide this Court with information concerning the renewable fuels industry that may assist the Court in understanding the issues in this litigation and assessing the practical implications of its decisions.

7

delay or vacatur of the Final Rule. An adverse ruling is likely to cause economic injury to RFA's members in the form of lower demand for renewable fuels (E15) and reduced regulatory certainty. *See Clinton v. City of New York*, 524 U.S. 417, 433 (1998) ("The Court routinely recognizes probable economic injury resulting from [governmental actions] that alter competitive conditions as sufficient to satisfy the [Article III 'injury-in-fact' requirement].... It follows logically that any...petitioner who is likely to suffer economic injury as a result of [governmental action] that changes market conditions satisfies this part of the standing test") (quoting 3 K. Davis & R. Pierce, Administrative Law Treatise 13–14 (3rd ed. 1994)) (alterations in original). In addition, given the industry-wide impact of EPA's regulatory action, neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

Because RFA and its members also meet the interest requirement under Federal Rule of Civil Procedure 24, as noted above, RFA also satisfies the Article III standing requirements for this Court. *See Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003) ("any person who satisfies Rule 24(a) will also meet Article III's standing requirement").

In challenges to EPA rules, this Court has consistently granted standing to regulated industries subject to the agency rule. *See Military Toxics Project*, 146 F.3d at 954 (finding that industry trade association whose members were subject to

challenged EPA regulation had standing in challenge of said regulation). Such a grant of standing would be appropriate here, where RFA's members produce the ethanol in the gasoline-ethanol blends and must comply with the misfueling mitigation measures described in the rule. Indeed, EPA has acknowledged that RFA members are affected by the rule. *See* 84 Fed. Reg. at 26,980. RFA also has a significant interest in ensuring EPA implements the 1-psi waiver in a way that furthers Congress's goal of facilitating ethanol blending and the use of renewable fuels. *See* 84 Fed. Reg. at 26,981 ("As is also clear from the text of the Energy Independence and Security Act of 2007…Congress intended to promote and accommodate expanded biofuel use….").

## CONCLUSION

For the foregoing reasons, RFA respectfully requests that the Court grant RFA leave to intervene in support of Respondent EPA.

Respectfully submitted,

/s/ Matthew W. Morrison
Matthew W. Morrison
Bryan M. Stockton
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, NW
Washington, DC 20036-3006
(202) 663-8036
matthew.morrison@pillsburylaw.com

*Counsel for Renewable Fuels Association*

June 11, 2019

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1, the Renewable Fuels Association states that it is a non-profit trade association within the meaning of Circuit Rule 26.1(b). Its members are ethanol producers and supporters of the ethanol industry. It operates for the purpose of promoting the general commercial, legislative, and other common interests of its members. The Renewable Fuels Association does not have a parent company, and no publicly held company has a 10% or greater ownership interest in it.

/s/ Matthew W. Morrison
Matthew W. Morrison
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, NW
Washington, DC 20036-3006
(202) 663-8036
matthew.morrison@pillsburylaw.com

*Counsel for Renewable Fuels Association*

June 11, 2019

# CERTIFICATE OF PARTIES AND AMICI CURIAE

As required by Circuit Rule 27(a)(4), the Renewable Fuels Association certifies that the parties in this case are:

*Petitioner*: American Fuel & Petrochemical Association

*Respondent*: U.S. Environmental Protection Agency

/s/ Matthew W. Morrison
Matthew W. Morrison
Bryan M. Stockton
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, NW
Washington, DC 20036-3006
(202) 663-8036
matthew.morrison@pillsburylaw.com

*Counsel for Renewable Fuels Association*

June 11, 2019

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), the undersigned hereby certifies:

1. This motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 1,938 words, excluding the exempted portions of the brief, as provided in Fed. R. App. P. 32(f). As permitted by Fed. R. App. P. 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

2. This motion complies with the typeface and type style requirements of Fed. R. App. P. 27(a)(5)-(6) because it was prepared in proportionally-spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

/s/ Matthew W. Morrison
Matthew W. Morrison
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, NW
Washington, DC 20036-3006
(202) 663-8036
matthew.morrison@pillsburylaw.com

*Counsel for Renewable Fuels Association*

June 11, 2019

# CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2019, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

    /s/ Matthew W. Morrison
Matthew W. Morrison
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, NW
Washington, DC 20036-3006
(202) 663-8036
matthew.morrison@pillsburylaw.com

*Counsel for Renewable Fuels Association*

June 11, 2019